Desmond, J. (dissenting).
The question is: may defendant State Teachers Retirement System, by adopting new (1946) mortality tables and by using those new tables to compute the annuities due on retirement to persons who became members before such change, validly compute the annuities of such members at levels below those that would have been arrived at by the use of other and older tables which showed less longevity? Put in another way, the question is whether such a practice is forbidden by subdivision 7 of article V of the State Constitution, effective July 1, 1940, which makes membership in such a retirement system a “ contractual relationship, the benefits of which shall not be diminished or impaired ”? Plaintiffs, school *13 teachers who became members of defendant system before 1940 and are now eligible for retirement, say that one of the ‘1 benefits ” protected by the Constitution is the right after retirement to an annuity in amount not less than would result from the application to the respective members’ accumulated annuity funds of the longevity tables in use when subdivision 7 of article V became law in 1940. On the other hand, defendant system points out that under the statutes in effect before and after 1940, the annuity was and is required by explicit and unambiguous statutory language to be “ the actuarial equivalent of his [the member’s] accumulated contributions at the time of his retirement ” (Education Law, § 510, subd. 2, par. a). Other clear statutes (Education Law, § 508, subds. 4, 5), defendant reminds us, require the use by the system of up-to-date mortality tables. The system concludes, therefore, that the “benefit” protected by the Constitution is no more than the right to an annuity which is “ at the time of his retirement ’ ’ and according to then current tables the actuarial equivalent of the member’s accumulated contributions.
Both courts below agreed with defendant Retirement System that fixation of annuities in accord with up-to-date mortality tables in effect at the time of retirement is not only constitutionally valid but is required by statute, even though the use of the newer tables results in an annuity about 5% less than would be fixed were the pre-1940 tables used. I think that conclusion is sound.
As is well known, a 11 retirement allowance ’ ’ is made up of two separate amounts separately derived and computed by entirely different formula}. The ‘ ‘ pension ’ ’ component (with which this litigation is in no way concerned) means “ the annual payments for life derived from payments made by an employer ” (§ 501, subd. 13) and consists of monthly payments computed by multiplying salary by a fraction determined by length of service (Education Law, § 510, subd. 2, par. b). What we are concerned with here is the 11 annuity ’ ’ component, that is, 11 the annual payments for life derived from contributions made by contributor ” (Education Law, § 501, subd. 12). Pension funds are contributions from the employing boards of education only. Annuities are established for each contributor from his own contributions only (plus interest). The annuity fund must be *14 kept actuarily sound. It is made up entirely of members’ savings. It follows, legally, mathematically and necessarily that a member is entitled ‘ ‘ at retirement ’ ’ to such an annuity only as his savings will produce according to appropriate tables.
The whole scheme of creating annuities (as distinguished from pensions) is thus described in subdivisions 4 and 5 of section 508 of the Education Law, in effect since before 1940:
“ 4. The retirement board shall provide for maintenance of an individual account with each member showing the amount of the member’s contributions and the interest accumulations thereon. It shall collect and keep in convenient form such data as shall be necessary for the preparation of the required mortality and service tables, and for the compilation of such other information as shall be required for the actuarial valuation of the assets and liabilities of the various funds created by this article. Upon the basis of the mortality and service experience of the members and beneficiaries of the system, the retirement board from time to time shall adopt the tables to be used for valuation purposes and for determining the amount of annuities to be allowed on the basis of the contributions of members.
“5. At such times as the retirement board may deem it necessary and at least once each quinquennial period, the retirement board shall have prepared by a competent actuary familiar with retirement systems, a report showing a complete valuation of the present and prospective assets and liabilities of the various funds created by this article with the exception of the expense fund. The actuary shall make an investigation of the mortality and service experience of the members of the retirement system and shall report fully upon its conditions with such recommendations as he shall deem advisable for the information of the retirement board in the proper operation of the retirement system.”
Add to those subdivisions the above-quoted provisions of paragraph a of subdivision 2 of section 510 of the Education Law that an annuity is to be in amount the “ actuarial equivalent ” of the respective member’s contributions “at the time of his retirement ”, and subdivision 5 of section 516 and subdivision 1 of section 517, transferring the member’s savings *15 at his retirement to an “ annuity reserve fund” from which his annuity is thereafter paid. Now we have the whole annuity scheme. Until retirement the system holds in the name of each member a separate account made up of his own payments plus interest. At retirement time the system computes the “ actuarial equivalent ” of the total in the member’s account and the result is the annuity amount for that member. For this purpose the mortality tables must be kept up to date by an actuary. While no statute says in so many words that the latest mortality table must be used, the whole sense of the statutory scheme requires such use. Since that statutory scheme was in full effect before and since 1940, there is no constitutional objection to applying it after 1940 as well as before.
Plaintiffs argue that the new tables with the resulting smaller annuities should be applied to those employees only who became system members after the new tables were made applicable in 1946. I see nothing in the constitutional provision to compel such a differentiation. The “ benefits ” frozen by the 1940 constitutional amendment involved the fixation of such separate annuity at and as of and not before the retirement time of the individual member. No system member ever had a right to an annuity of any particular dollar amount. His right was to receive as an annuity the actuarial equivalent of his total savings. Not only is such equivalence required, by precise statutory language, to be computed at and as of the retirement date, but it is obvious that to be actuarily equivalent the annuity could not be computed as of any other time. The requirement in subdivisions 4 and 5 of section 508 of the Education Law that the mortality tables be periodically reviewed and new tables adopted and used in computation of annuities merely spells out and confirms what is implicit in the 61 actuarily equivalent ’ ’ standard set out in paragraph a of subdivision 2 of section 510.
Therefore, the answer to all plaintiffs’ arguments is that the ‘ ‘ benefit ’ ’ made irreducible by the Constitution is no more than a right to such an annuity as is purchasable at retirement according to current actuarial formulae out of the member’s own particular savings fund. Until retirement that fund is kept in the custody of the system as if in a savings bank.
The judgment appealed from should be affirmed.
*16 Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur with Chief Judge Conway ; Judge' Desmond dissents in an opinion.
Judgment reversed, with costs in all courts, and the matter remitted to Special Term for further proceedings in accordance with the opinion herein.